IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEAN FORD | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  06-0220 |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security | : | |

**<u>MEMORANDUM AND ORDER</u>**

AND NOW, this 7th day of December, 2006, upon consideration of the cross-motions for summary judgment filed by the parties and plaintiff's reply thereto (Doc. Nos. 13, 16 and 18), the court makes the following findings and conclusions:

        1.      On June 17, 1999,[1] Jean Ford ("Ford") filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f, alleging an onset date of April 14, 1992.[2]  (Tr. 81-84; 97-100; 380).  Although Ford's case was remanded in February of 2005 so that the administrative law judge ("ALJ") could recontact Ford's treating physician for an explanation of his opinion, throughout the rest of the administrative process, including an administrative hearing held on June 7, 2005 before an ALJ, Ford's claims were denied.  (Tr. 5-8; 12-14; 20-22; 66-67; 68; 70-73; 75-77; 406-08; 413-26; 459-63; 470).  Pursuant to 42 U.S.C. § 405(g), on February 14, 2006, Ford filed her complaint in this court seeking review of that decision.

        2.      In his decision, the ALJ concluded that Ford had severe impairments consisting of degenerative disc disease of the lumbar and cervical spine and coronary disorders.  (Tr. 418 ¶ 3; 425 Finding 3).[3]  The ALJ further concluded that Ford's impairments did not meet or equal a listing, that she was capable of performing her prior work as an insurance rater and claims examiner, that she also retained the residual functional capacity ("RFC") to perform sedentary work with only occasional climbing, balancing, stooping, kneeling, crouching, or crawling, and that she was not disabled.  (Tr. 419 ¶ 6; 421 ¶¶ 2-3, 5; 424 ¶ 3; 425 ¶ 2, Findings 4, 6; 426 Finding 7-9).

        3.      The Court has plenary review of legal issues, but reviews the ALJ's factual findings to determine whether they are supported by substantial evidence.  <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 431 (3d. Cir. 1999) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "such

---

[1] The court notes that the dates on which Ford filed her applications over the years are somewhat unclear because of the wide variety of referenced dates.

[2] Ford filed two previous applications for benefits in 1992 and 1995, both of which were denied.  (Tr. 23).  Since the decisions in both of these previous cases are final, the earliest Ford can be found to be disabled is October 9, 1997.  (Tr. 43-44).  Ford's subsequent application for benefits in November of 2001 was forwarded to the Appeals Council in September of 2002 for consideration with the 1999 applications.  (Tr. 470-72).

[3] All numbered paragraph references to the ALJ's decision begin with the first full paragraph on each page.

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). It is more than a mere scintilla but may be less than a preponderance. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). If the conclusion of the ALJ is supported by substantial evidence, this court may not set aside the Commissioner's decision even if it would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. § 405(g).

      4.     Ford raises three arguments in which she alleges that the determinations by the ALJ were either not supported by substantial evidence or were legally erroneous. These arguments are addressed below. However, upon due consideration of all of the arguments and evidence, I find that the ALJ's decision is legally sufficient and supported by substantial evidence.

      A.     Ford claims that the case should be remanded due to new evidence which was not previously submitted to the ALJ.[4] When a claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner, but only if: (1) the evidence is "new and not merely cumulative of what is already in the record" and (2) material; and (3) the claimant shows that there was good cause for not previously presenting the evidence to the ALJ. Szubak v. Sec. of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984); 42 U.S.C. § 405(g); Fisher v. Massanari, 28 Fed. Appx. 158, 159 (3d Cir. 2002) (citing Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001)). The Supreme Court stated that a sixth sentence remand is "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990). Where the allegedly new and material evidence was in existence before the ALJ's decision, remanding a case pursuant to sentence six would "eliminate plaintiff's responsibility to present her case for disability before the Secretary" and fail to serve the principle that new evidence remands "should be narrowly circumscribed" "to facilitate the speedy disposition of meritorious claims." Alper v. Shalala, No. 94-5972, 1995 WL 141929, at *2 (E.D. Pa. Mar. 27, 1995). Ford argues that although the allegedly new evidence, which consisted of two letters, was generated on August 9 and 16, 2005 and the ALJ did not issue his decision until October 13, 2005, that good cause is demonstrated because Ford's attorney was not aware of the report and could not reasonably have been aware of it. (Tr. 411-12; 416-26). However, even if Ford's attorney was not aware of the letters in time to submit them to the ALJ, claimants, themselves, have a duty to exercise reasonable diligence to present the Secretary with all of the evidence relevant to their claim and both Ford and her attorney were informed by the ALJ at the hearing that the ALJ would not be working on the case until at least August.[5] Alper, 1995 WL 14929 at *1-2; Matthews v. Apfel, No. 98-1125, 1999 WL 1268043, at *5 (E.D. Pa. Dec. 28, 1999); (Tr. 452). As a result, a remand due to new evidence is not warranted in this case.

---

[4]Although Ford makes this argument in the alternative, since she uses the relevant evidence to support her other arguments, the court addresses this argument first.

[5]The court notes that it is not convinced of the materiality of the letters despite Ford's assertion that "[t]his diagnosis brings together and makes sense of Mrs. Ford's longtime and consistent symptoms of chest pain," because after making this diagnosis, David Knox, MD ("Dr. Knox") stated that she should continue with the medication she had been taking, and, even when asked, Dr. Knox did not indicate that Prinzmental angina pectoris was consistent with her complaints of chest pain and response to medication. (Tr. 411); Doc. No. 18, Attachment.

B.   Ford also asserts that the ALJ erred in failing to include Ford's alleged non-exertional limitations in the RFC. In assessing a claimant's RFC, the ALJ must consider all of the available evidence and determine whether the alleged limitations, such as pain and fatigue, are consistent with the medical findings and other evidence in the record to decide how a claimant's symptoms affect his or her ability to work. SSR 96-8p, 1996 WL 374184, at *1; 20 C.F.R. §§ 404.1529(a); 416.929(a). An alleged symptom will not be rejected solely because there is no objective medical evidence to support it, however, an ALJ may find a reported symptom not credible if it is inconsistent with evidence in the record. 20 C.F.R. §§ 404.1529(c)(2)-(4), 416.929(c)(2)-(4); Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

Ford alleges that her chest pain, which she claims is aggravated by stress, imposes non-exertional limitations that were not accounted for in the RFC. The ALJ acknowledged that Ford had complained of chest pain exacerbated by stress, however, he noted that Ford reported to the doctors that the medication she was taking helped her chest pain and that none of the cardiologists found significant cardiac etiology to explain her complaints.[6] (Tr. 422 ¶¶ 1; 3; 490). In discounting Ford's reported chest pain, the ALJ also noted that Ford reported at the 2000 hearing that she had been applying for jobs and that in a 1998 application for Ford to foster children, her treating physician, Melvin Jackson, MD ("Dr. Jackson") reported that her medications would not prevent her from caring for children and that he did not know of Ford having any negative reactions to stress or any reason for Ford not to be approved as a foster parent. (Tr. 47; 151; 422 ¶ 5). Since the objective medical evidence does not support her reports of chest pain and Ford's applications for jobs and fostering children are inconsistent with Ford's allegations, the ALJ's decision to discount Ford's allegations and not include a related non-exertional limitation was supported by substantial evidence.

Ford also argues that the ALJ erred in failing to include a non-exertional limitation related to her reported fatigue.[7] Although drowsiness is often a side effect of medication, an ALJ's decision to discount such an allegation and not include a related limitation in the RFC is supported by substantial evidence if the record does not reflect serious functional limitations resulting from the drowsiness. Burns v. Barnhart, 312 F.3d 113, 130-31 (3d Cir. 2002). Ford contends that her allegations of drowsiness as a side effect of her medications is supported by the fact that the Physicians' Desk Reference states that a potential side effect of Motrin, Lipitor, and beta blockers, all of which Ford takes, is fatigue. The fact that Ford's medication could result in drowsiness does not demonstrate that her reported drowsiness resulted in serious functional limitations. Although Ford reported drowsiness, which was reflected in Dr. Jackson's treatment notes, the record does not show that any serious functional limitations resulted from her alleged drowsiness and since her applications for jobs and to care for foster children are inconsistent with her reports of fatigue, the ALJ's decision to discount her

---

[6]Ford argues that the ALJ was incorrect in concluding that the cardiac testing had been "basically normal" and that her electrocardiograms were "essentially unremarkable" because the cardiologists reported her electrocardiograms revealed ST-T wave abnormalities. (Tr. 288; 311; 420 ¶ 1; 490; 510; 513; 572; 676; 680; 681). However, the court notes these abnormalities were described as "very minor" by more than one doctor, in August of 2001 Dr. Knoz wrote that her electrocardiogram was "normal," and that the doctors clearly concluded that these findings did not demonstrate her chest pain was of cardiac etiology. (Tr. 288; 490; 512; 554).

[7]Ford asserts that the stress tests she had demonstrate her fatigue, since two of them, including one not in the relevant time period, were stopped because of fatigue. The court notes that of the two exercise stress tests conducted during the relevant time period, one was stopped as a result of fatigue and the other for reaching the target heart rate and the evaluations show that her exercise tolerance was normal once and fair the other time. (Tr. 513; 698). These test results have minimal relevance to whether or not the ALJ should have included a non-exertional limitation for Ford's alleged fatigue during the workday.

3

allegations was supported by substantial evidence. See Rutherford, 399 F.3d at 554.

    C. Lastly, Ford claims that the ALJ erred by failing to give controlling weight to the opinion of her treating physician, Dr. Jackson, that Ford was disabled. I first note that the ultimate disability determination is reserved for the ALJ and a treating physician's opinion on that topic is not entitled to any special significance. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); S.S.R. 96-5p. Furthermore, a treating physician is only provided controlling weight when his or her opinion is well supported by medically acceptable sources and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In August of 1994, Dr. Jackson stated that Ford's ability to work was unlimited because she was stable on medications. (Tr. 156). Three months later he opined that her capacity was limited, but she could work with accommodations. (Tr. 157). On January 19, 1995, Dr. Jackson found Ford to be temporarily incapacitated for a year without an explanation of how her condition had changed.[8] (Tr. 158). Dr. Jackson opined that Ford was unable to work pursuant to her heart condition on September 10, 1997. (Tr. 336). The ALJ noted Dr. Jackson's opinion was inconsistent with the September 1997 letter from William VanDecker, MD ("Dr. VanDecker") in which he found that "there is no objective testing data to support a significant intrinsic cardiac etiology of the patient's symptoms" and stated that "underlying significant coronary artery disease is very unlikely." (Tr. 490). Dr. Jackson also stated Ford was disabled in 1998, 2002, and 2003, although his diagnoses were not consistent in that he found her primary diagnosis to be cardiomyopathy and mitral valve prolapse in 1998, hypertension, hyperlipidemia, and cardiomyopathy in 2002, and chronic muscloskeletal pain and cardiomyopathy in 2003. (Tr. 159; 684; 683). Despite Dr. Jackson's assertion to the contrary,[9] his findings that Ford was disabled for these reasons are not consistent with other medical evidence in the record showing that her chest pain had no cardiac etiology, and she had "questionable mitral valve prolapse," "no significant atherosclerotic disease," no significant vavular abnormality, and moderate degenerative disc disease with no evidence of radiculopathy.[10] (Tr. 195; 200; 490; 561; 699; 710). Additionally, his findings of disability in August of 1998 are inconsistent with his statement in October of 1998 in Ford's application to be a foster parent that she was in good overall health, her medication would not prevent her from caring for children, and he could see no reason why Ford should not be approved as a foster parent. (Tr. 151). This is not to say there is no evidence of impairments in the record. However, Dr. Jackson's findings of disability are not consistent with substantial evidence in the medical record, so the ALJ did not err in discounting Dr. Jackson's findings.

---

[8]The court notes Ford was in a rear end collision in August of 1996, however, that clearly is not the cause of this temporary incapacitation. (Tr. 197).

[9]On August 4, 2005, Dr. Jackson responded to interrogatories saying that he still believed his 1997 report to be accurate, that he relied on the specialist's reports, and that he found their findings to be consistent with Ford's complaints. (Tr. 710).

[10]His findings are also inconsistent with the three consulting doctors, who did not have access to Dr. Jackson's files and whose findings ranged from Ford being able to perform medium work to a restricted range of light work. (Tr. 291-98; 320-25; 648-54).

Upon careful and independent consideration, the record reveals that the Commissioner applied the correct legal standards and that the record as a whole contains substantial evidence to support the ALJ's findings of fact and conclusions of law.  Therefore, it is hereby **ORDERED** that:

5. The motion for summary judgment filed by Jean Ford is **DENIED**;

6. The motion for summary judgment filed by the Commissioner is **GRANTED** and **JUDGMENT IS ENTERED IN FAVOR OF THE COMMISSIONER AND AGAINST JEAN FORD**; and

7. The Clerk of Court is hereby directed to mark this case as **CLOSED**.

S/Lowell A. Reed, Jr.
LOWELL A. REED, JR., S.J.